# EXHIBIT 1

**From:**   jlsgo
**To:**   Soazig Goardon
**Subject:**   MV Tiger Hebei - CARGO FIXTURE
**Attachments:**   image0.jpg
Boral Proforma CP.pdf
VOY2103 PER-STOWAGE PLAN 27500 .xls
290421-30813339.msg
260121-pkb011413.msg
LAURITZEN BULKERS - BULK FLYASH PORT OF STOCKTON.pdf
280421-30792206.msg

Peter,

As per our agreement

## Addendum No. 1 to Charter Party Dated March 29th JAN, 2021

It is this day, March 16TH, 2021 , the amendments detailed below have been mutually agreed between Owners and Charterers :

LAYCAN : MAY 3/10, 2021

FRT USD 35.75  PMT FIOS BASIS 1/1 ON A SEMI BOXED SHAPED VSL(BOXED IN HOLDS 2/3/4).

All other terms, conditions and exceptions of the Charter Party and of other Addenda shall remain unchanged and to stay in force.

B.Regds
Jay

Peter,

Subs are lifted and we are fixed clean.

B.Regds

Sent from my iPhone

Begin forwarded message:

> **From:** Jay Jaywant Private <Jay.Jaywant.p@brsbrokers.com>
> **Date:** January 29, 2021 at 12:44:00 PM EST
> **To:** "JLUSA (chartering@lauritzenbulkers.us)"
> <chartering@lauritzenbulkers.us>
> **Subject: JL TBN/Boral Industries  - Main terms recap**

As per your authority we have agreed to the flwng .

-SUB CHRTRS RECON/BOD APPROVAL LATEST BY 1700 NYT ON
FRIDAY 29TH JAN, 2021.

JL TBN

**OR SUBSTITUE IN OWNERS OPTION**

ACTUAL PERFORMING VSL TO BE NOMINATED LATEST 7 DAYS PRIOR
ETA OF THE VESSEL.

Chrtrs to have 1(one ) business day to approve the nomination.

Performing vessel to be/have:
-max 20 yrs.
-performing vessel to have minimum 4 cranes of 30 mt lifting, same
to service all holds where cargo is stowed, each crane serving all
hatches simultaneously and independently. Owners warrant that
vsls swl can maintain this lifting capacity.
-classed highest lloyds or equivalent by a member of the iacs for
entirety of voyage.
-holds to be free of hindrances, obstacles, cargo battens, batten
clips and horizontal metal slabs.
-tanktops to be flush without obstructions that could hinder the
operation of front loader or bulldozers.
-cables/pipes to be protected so that it is impossible for discharging
equipment to contact same inside the holds.
- deck to be free of cardecks, timber racks, permanent stanchions,
unless they are collapsible and similar hindrances except fixed
stanchions in the way of the crane house.
-holds to be fully accessible when hatches are fully open. Tank top
smooth and free of any obstructions of any type. Tunnels, exposed
cables and pipes shall be entirely protected.
-vessels are suitable for working of rubber-tired bulldozers, forklifts
and/or payloaders in the vessel's hold not exceeding vessel's
tanktop strength.
-no duct tape, masking tape and/or burlap or any other materials to
be used inside holds where it could come into contact with bulk
cargo and/or any unloading equipment.
- holds to be weather tight.
-fully ism and p&i covered for the duration of the voyage.
-p&i club intl group members only.
-no centerline beam/bulkheads/fittings/obstructions in holds.
-suitable in all respects for all load and discharge port. The vessel
should be capable of using spreader bars attached to vessels cranes
for discharge.
-no twin hatches.

-open hatch Box shaped vsl or to be box shaped in holds 2/3/4.
-vessel has macgregor type or similar folding fore and aft hatch covers.
-vessel to be fully itf or equivalent.


OWNERS TO CONFIRM

-  THE VSL IS CLASSED 100A1 LLOYDS HIGHEST OR EQUIV WITH A REGISTRY   BEING  A  MEMBER  OF  THE  INTERNATIONAL ASSOCIATION  OF  CLASSIFICATION  SOCIETIES  WITH  NO SUBJECTS  OR  CONDITIONS  IMPOSED  BY  CLASS  AND  IN  EVERY WAY FITTED AND SUITABLE FOR THE INTENDED VOYAGE WITH ALL  CERTIFICATES CURRENT AND VALID.
- VSL HAS MACGREGOR TYPE OR SIMILAR FOLDING FORE AND AFT HA COVERS.
- VSL HAS CRANES  WORK SIMULTANEOUSLY AND SERVE ALL HATCHES  AVAILABLE FOR CGO.
- VSL HAS NO CENTERLINE BULKHEAD OR STANCHIONS OR ANY OTHER OBSTRUCTIONS IN THE HOLDS.
- VSLS BALLAST TANKS TO MAINTAIN THE SAME BALLAST CONDITION PRIOR TO COMMENCEMENT OF LOADING AND ON COMPL OF DISCHG.
- VSL CAPABLE OF DEBALLASTING FULLY WITHIN 24 HRS.

-  OWNERS  WARRANT  THAT  AT  ALL  TIMES  DURING  THE PERFORMANCE  OF  THIS  CHARTER,  THE  VSL  SHALL  STRICTLY ADHERE  TO  AND  CONFORM  TO  THE  REQUIREMENTS  OF  THE  ISM CODE  AND  SHALL  BE  IN  POSSESSION  OF  A   VALID  SAFETY MANAGEMENT CERTIFICATE (SMC). OWS FURTHER WARRANT THAT AT ALL TIMES DURING THE PERFORMANCE OF THIS CHARTER, THE OWNER OR THE MANAGER SHALL COMPLY WITH THE PROVISIONS OF THE ISM CODE   AND BE IN POSSESSION OF A DOCUMENT OF COMPLIANCE. UPON  REQUEST  THE  OWNERS  SHALL  PROVIDE  A COPY OF THE RELEVANT  DOCUMENT  OF COMPLIANCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS, AGENTS      AND/OR  ANY  AUTHORITIES  REQUIRING   SAME.THE OWS/MANAGERS  ARE  TO  BE  RESPONSIBLE  FOR  ANY  AND  ALL COSTS   AND  CONSEQUENCES  ARISING  AS  A  RESULT  OF  NON-COMPLIANCE WITH   FOREGOING.

- USCG CLAUSE
OWNERS CONFIRM THAT THE VESSEL IS NOT ENTERED ON THE USCG LIST DUES  TO   VESSEL, FLAG, OWNERSHIP, CLASSIFICATION, VESSELS BOARDING  HISTORY,  OUTSTANDING ITEMS NOTED DURING PREVIOUS USCG INSPECTIONS   ,OR DUE TO ANY   CAUSE WHATSOEVER ARISING FROM THE TERMS/CONDITONS  OF U.S HOMELAND SECURITY RULES/REGULATIONS/LEGISLATION. IN CASE THE IS DETAINED BY ANY COMPETENT US AUTHORITY DUE TO THE AFOREMENTIONED CAUSES OR ANY NEW INCIDENTS INVOLVING COMPPETENT U.S  AUTHORITIES,OWNERS ARE TO BE RESPONSIBLE FOR ANY/ALL EXPENSES  INVOLVED, AND IF THE VESSEL IS PREVENTED FROM CARRYING OUT   LOADING/DISCHARGING OPERATIONS OR FROM ENTERING/LEAVING PORT(S) THEN  TIME NOT TO COUNT.

- US TRADE UNIQUE BILL OF LADING IDENTIFIER CLAUSE  THE

OWNERS WARRANT THAT AS OF MARCH O4/04 THEY WILL HAVE AN INTERNATIONAL CARRIERS BOND FILED WITH US CUSTOMS.IN ADDITION THE  OWNERS WARRANT THAT THEY WILL HAVE A VALID UNIQUE BILL OF LADING  IDENTIFIER (SCAC CODE ) FOR USE ON BILLS OF LADING FOR CARGO TO  AND FROM THE U.S.A AS REQUIRED BY U.S CUSTOMS. NON-COMPLIANCE WITH THE PROVISIONS ABOVE SHALL AMOUNT TO A BREACH OF  WARRANTY FOR THE CONSEQUENCES OF WHICH THE OWNERS SHALL BE LIABLE AND SHALL HOLD THE CHARTERERS HARMLESS AND SHALL KEEP THEM  INDEMNIFIED AGAINST ALL CLAIMS WHATSOEVER WHICH MAY ARISE AND BE  MADE AGAINST THEM.

- BIMCO ISPS CLAUSE TO APPLY AND DEEMED INCORPORATED IN THE C/P. STANDARD PORT TARIFFS FOR SECURITY ARE TO BE CONSTRUED AS  EXPENSES  UNDER THE ISPS CLAUSE WHICH WILL BE FOR THE OWNERS ACCOUNT AND THAT ALL STANDARD CHARGES FOR CARGO/WHARFAGE ARE FOR CHRS ACCOUNT AND ALL STANDARD CHARGES (INCL ALL SECURITY CHARGES AND PORT SECURITY FEES ) FOR DOCKAGE ARE FOR OWNER'S ACCT.

- OWS WARRANT THE VSL HAS A VALID INTERNATIONAL SHIP SECURITY CERTIFICATE   (ISSC) ONBOARD. ANY TIME LOAT/EXPENSES INCURRED AS A  RESULT OF OWS VIOLATION OF THIS CLAUSE TO BE FOR OWS ACCT.

- THE VSL TO HV IN POSSESSION ALL NECESSARY CERTIFICATES FOR HULL, MACHINERY, EQUIPMENT, CLASS, ETC FOR THE DURATION OF THIS VOYAGE.


-OWNERS BANKING DETAILS

Danske Bank
Holmens Kanal 2-12

Copenhagen
DENMARK

SWIFT Code: █████████
Account No.: █████████████
Beneficiary: Lauritzen Bulkers A/S




ACCT : BORAL  RESOURCES LLC
===============================

FULL AND COMPLETE CARGO CONSISTING OF

-27.500 MT MIN/MAX OF BAGGED FLYASH IN JUMBO BAGS 1.5 MT EACH. BAGS TO BE STACKED MAX UPTO 7 TIERS HIGH.

--ANY DUNNAGE / LASHING / SECURING MATERIALS TO BE PROVIDED BY CHARTERERS/SHIPPERS AT THEIR EXPENSE.

-CARGO TO STOWED / SECURED / LASHED TO MASTERS
SATISFACTION WHICH NOT TO BE UNREASONABLE

-ALL DUNNAGE /LASHING / SECURING MATERIALS PROVIDED BY
CHARTERS/RECEIVERS TO BE DISHARGED AT CHARTERS TIME,
RISK AND EXPENSE.

-ALL DUNNAGE MATERIAL TO BE AS PER REGULATION IN USA AND
INDIA

-LOAD : 1SB/SP KRISHNAPATNAM AAAA

-SHIFTING TO ANY ADDITIONAL BERTHS IF REQUESTED BY THE
CHRTRS/SHHIPPERS TO BE AT THE TIME AND EXPENSE OF THE
CHRTRS/SHIPPERS.

 -DISCH : 1 SB STOCKTON.

-OWNS TO SATISFY THEMSELVES REG THE COMPATIBILITY OF THE
SHIP AT LOAD/DISCH PORT.

-LAYCAN : APRIL 8/15, 2021

-LOAD RATE:  2,500 MT PER 24 CONSECUTIVE HRS OR PRO RATA
SHINC (EXCLUDING BIMCO HOLIDAYS ) .

-DISCH RATE : 5,000 MT PER 24 CONSECUTIVE HRS OR PRO RATA
SHINC (EXCLUDING BIMCO HOLIDAYS ).

AT LOAD PORT
----------------------

-FOR LOAD PORT ,LAYTIME SHALL COMMENCE AT 08.00 HOURS ON
NEXT WORKING DAY AFTER NOTICE OF READINESS (NOR)
TENDERED AND ACCEPTED.  NOR TO BE TENDERED/ACCEPTED
DURING OFFICE HOURS 0900 TO 1700 HOUR MONDAY/SUNDAY EXL
BIMCO AND LOCAL HOLIDAYS AT LOAD PORT IN
WRITING/TELEX/FAX/EMAIL WHEN VSL IS FULLY BERTHED AND
LOAD READY IN EVERY RESPECT.IF VESSEL ONLY PARTIALLY
LOAD READY AND CHARTERERS OPTION TO COMMENCE
LOADING/DISCHARGING,TIME TO COUNT PRO-RATA UNTIL VESSEL
IS OFFICIALLY PASSED IN ALL HOLDS.

ONLY IF THE LOADING BERTH IS OCCUPIED, MASTER MAY
WARRANT THAT THE VESSEL IS IN ALL RESPECTS READY TO LOAD
AND MAY TENDER THE NOR TO LOAD FROM ANY USUAL WAITING
PLACE, WHETHER IN PORT OR NOT (WIPON), WHETHER IN BERTH
OR NOT (WIBON), WHETHER IN FREE PRATIQUE OR NOT (WIFPON),
WHETHER IN CUSTOM CLEARANCE OR NOT (WICCON).

-PRIOR TIME IF USED NOT TO COUNT AT LOAD PORT.

-TIME LOST FOR OPENNING AND CLOSING OF HATCHES AND
PREPARING THE VESSEL UNTILL SHE IS IN ALL RESPECTS READY

FOR LOADING/DISCHARGING SHALL NOT COUNT AS LAYTIME.TIME
ACTUALLY USED FOR STEAMING FROM PILOT STATION TO THE
BERTH,BOTH AT LOADING AND DISCHARGING PORTS, NOT TO
COUNT AS LAYTIME, EVEN IF VESSEL ON DEMMURAGE.

TIME OF SHIFTING FROM THE ANCHORAGE OR PLACE OF WAITING
TO THE LOADING BERTH SHALL NOT BE COUNTED AS LAYTIME
EVEN IF ON DEMURRAGE.

ACTUAL TIME LOST AT THE LOADING PORT IN OBTAINING FREE
PRATIQUE OR CUSTOMS CLEARANCE SHALL NOT BE COUNTED AS
LAYTIME.

ACTUAL TIME LOST AT THE LOADING PORT DUE TO INITIAL DRAFT
SURVEY, FINAL DRAFT SURVEY AND HOLD INSPECTION SHALL NOT
BE COUNTED AS LAYTIME EVEN IF VESSEL IS ALREADY ON
DEMURRAGE UNLESS LOADING OPERATIONS HAVE COMMENCED,
IN WHICH CASE ACTUAL TIME USED TO COUNT AS LAYTIME. TIME
USED FOR INTERMITTENT DRAFT SURVEYS REQUESTED BY THE
SHIPPER TO COUNT AS LAYTIME.

IF THE PORT AUTHORITIES OR THE HARBOR MASTER REFUSED TO
ENTER THE VESSEL DUE TO BAD WEATHER, LACK OF VISIBILITY,
HIGH WINDS OR ANY OTHER REASON REGARDING THE SAFETY OF
THE CREW OR VESSEL, THE TIME LOST OCCASIONED THEREBY
SHALL NOT BE COUNTED AS LAYTIME.

AT DISCH PORT
-----------------------

LAYTIME SHALL COMMENCE AT 08.00 HOURS ON NEXT WORKING
DAY AFTER NOTICE OF READINESS (NOR) TENDERED AND
ACCEPTED. NOR TO BE TENDERED/ACCEPTED DURING OFFICE
HOURS 0900 TO 1700 HOURS MONDAY/SUNDAY EXCLUDING BIMCO
AND LOCAL HOLIDAYS AT DISCHARGE PORT IN
WRITING/TELEX/FAX WHEN VESSEL IS FULLY BERTHED AND
DISCHARGE READY IN EVERY RESPECT. IF VESSEL ONLY
PARTIALLY DISCHARGE READY AND CHARTERERS OPTION TO
COMMENCE DISCHARGING, TIME TO COUNT PRO-RATA UNTIL
VESSEL IS OFFICIALLY PASSED IN ALL HOLDS.
PRIOR TIME IF USED NOT TO COUNT AT DISCHARGE PORT.

TIME LOST FOR OPENING AND CLOSING OF HATCHES AND
PREPARING THE VESSEL UNTIL SHE IS IN ALL RESPECTS READY
FOR DISCHARGING SHALL NOT COUNT AS LAYTIME EVEN IF
VESSEL IS ON DEMURRAGE. TIME ACTUALLY USED FOR STEAMING
FROM PILOT STATION TO THE BERTH AT DISCHARGING PORT NOT
TO COUNT AS LAYTIME EVEN IF VESSEL ON DEMURRAGE.

TIME SHIFTING FROM ANCHORAGE OR WAITING PLACE TO BERTH
NOT TO COUNT AS LAYTIME.

ONLY IF THE DISCHARGING BERTH IS OCCUPIED, MASTER MAY WARRANT THAT THE VESSEL IS IN ALL RESPECTS READY TO LOAD AND MAY TENDER THE N.O.R. TO LOAD FROM ANY USUAL WAITING PLACE, WHETHER IN PORT OR NOT (WIPON), WHETHER IN BERTH OR NOT (WIBON), WHETHER IN FREE PRATIQUE OR NOT (WIFPON), WHETHER IN CUSTOM CLEARANCE OR NOT (WICCON).

TIME OF SHIFTING FROM ANCHORAGE TO DISCHARGING BERTH AND/OR CLEARING CUSTOMS AND/OR FOR OBTAINING FREE PRATIQUE NOT TO COUNT EVEN IF THE VESSEL IS ALREADY ON DEMURRAGE.

TIME FOR COAST GUARD SECURITY CLEARANCE NOT TO COUNT AS LAYTIME OR TURN TIME EVEN IF VESSEL IS ON DEMURRAGE. IF DOCK IS AVAILABLE BUT PORT AUTHORITIES REFUSE TO ENTER THE VESSEL DUE TO BAD WEATHER, LACK OF VISIBILITY OR ANY OTHER PHYSICAL REASON REGARDING THE SAFETY OF THE VESSEL, CREW OR THE PORT, ANY TIME LOST WAITING FOR PORT AUTHORITIES APPROVAL FOR ENTERING THE PORT WILL NOT COUNT AS LAYTIME EVEN IF VESSEL IS ON DEMURRAGE.

DISCHARGING TIME CEASES TO COUNT UPON COMPLETION OF DISCHARGING CARGO AND CARGO HOLDS HAVE BEEN SHOVEL CLEANED AND ALL DISCHARGING EQUIPMENT INCLUDING BOBCATS, HAS BEEN TAKEN OUT OF CARGO HOLDS.

THE MASTER, OFFICERS AND CREW WILL RENDER CUSTOMARY ASSISTANCE IN PREPARING THE VESSEL FOR DISCHARGING WITHOUT DELAY AND KEEPING DELAYS DURING CARGO OPERATIONS TO A MINIMUM.

MASTER AND CREW TO BE FULLY COOPERATIVE IN SHIFTING VESSEL ALONGSIDE THE REPORTING TO CHARTERERS/AGENTS INFORMATION ON LOADING AND DISCHARGE DAILY OPERATIONS, TIME FOR SHIFTING TO BE ON CHARTERERS/RECEIVERS ACCOUNT.

 -LAYTIME TO BE NON REVERSIBLE BETWEEN LOAD/DISCH PORTS.

- FRT USD 35.00  PMT FIOS BASIS 1/1 ON A SEMI BOXED SHAPED VSL(BOXED IN HOLDS 2/3/4).

-OWNS TO SATISFY THEMSELVES ON PORT RESTRICTIONS AND VESSEL SUITABILITY BENDS.

-100 PCT FREIGHT, TO BE PAID ON B/L WEIGHT WITHIN 5 BANKING DAYS OF S/R CLEAN ON BOARD B/L MARKED "FREIGHT PAYABLE AS PER C/P". CHOPT TO ISSUE B/L MARKED 'FRT PREPAID' IN WHICH CASE SAME TO BE RELEASED PROMPTLY ON RECEIPT OF BANKS CONFIRMATION THAT FREIGHT HAS BEEN IRREVOCABLY RECEIVED.

-DEMURRAGE: USD 12,000 PDPR / HALF DESPATCH (50%) BOTH PORTS WTSBENDS. SETTLEMENT OF DEMURRAGE/DISPATCH SHALL TAKE PLACE BY EMAIL WITHIN 30 DAYS FROM RECEIPT OF THE RELEVANT DOCUMENTS, NAMELY INVOICE, TIME SHEET AND

STATEMENT OF FACTS DULY SIGNED BY THE MASTER OF THE VESSEL AND THE AGENT AT THE LOADING/DISCHARGING PORT.

-ANY TAXES, DUES AND CHARGES ON CARGO FOR CHARTERERS/SHIPPERS ACCOUNT.ANY TAXES, DUES AND CHARGES INCL ANY ISPS CHARGES  ON THE SHIP AND/OR FREIGHT INCLUDING ANY TAXES AND DUES ASSESSED/LEVIED ON THE CARGO WHICH USUALLY FORM PART OF NORMAL PORT DISBURSEMENTS ARE FOR OWRS ACCT.

B/L CLS:
IF ONLY MATE'S RECEIPT(S) WILL BE ISSUED AT LOADING PORT THEN CHARTERERS HAVE THE OPTION TO HAVE ORIGINAL BILLS OF LADING ISSUED BY THEIR AGENT FOXTROT LTD IN LONDON AFTER OWNERS APPROVAL OF THE DRAFT.ALTERNATIVELY IF BILLS OF LADING ARE ISSUED AT LOADING PORT THEN CHARTERERS HAVE THE OPTION TO HAVE THE 1ST SET EXCHANGED VIA THEIR AGENT

 IN CASE ORIGINAL BILLS OF LADING ARE NOT AVAILABLE ON VESSEL'S ARRIVAL AT DISCHARGING PORT THEN OWNERS TO DELIVER THE CARGO INTO AGENTS/ CUSTOMS CUSTODY AGAINST LOI IN OWNERS STANDARD P&I WORDING SIGNED BY CHRS ONLY.

-IN CASE OF DISCREPANCY BETWEEN SHIPPERS/CONSIGNEE/NOTIFY PARTY IN MATES RECEIPT AND BILL OF LADING, CHTS TO PROVIDE LOI IN STANDARD P+I CLUB WORDING.

-ANY TAXES, DUES AND CHARGES ON CARGO FOR CHARTERERS/SHIPPERS ACCOUNT.ANY TAXES, DUES AND CHARGES INCL ANY ISPS CHARGES  ON THE SHIP AND/OR FREIGHT INCLUDING ANY TAXES AND DUES ASSESSED/LEVIED ON THE CARGO WHICH USUALLY FORM PART OF NORMAL PORT DISBURSEMENTS ARE FOR OWRS ACCT. INDIAN FREIGHT TAX IF ANY APPLICABLE TO BE FOR OWNERS ACCOUNT.


- IF VSLS CGO GEAR, HA COVERS, MOORING WINCHES, ETC ARE FOUND NOT TO BE IN GOOD WORKING CONDITION AT EITHER LOAD OR DISCHG PORT, OWS TO BE RESPONSIBLE FOR ANY DIRECTLY RELATED EXPENSES AND DELAYS INCURRED,INCL STEVEDORE STANDBY TIME UP TO MAXIMUM 1 SHIFT, DUE TO FAILURE OF SAME.IN THE EVENT OF GEARS BREAKDOWN AT THE LOADPORT FOR MORE THAN 24 CONSECUTIVE HOURS. CHARTERERS SHALL HAVE THE OPTION TO HIRE SHORE CRANE(S), IF AVAILABLE.CHARTERERS/SHIPPERS/RECEIVERS HAVE RIGHT TO USE VESSELS DERRICKS/WINCHES UPTO THEIR LIFTING CAPACITY AS PER VESSEL DESCRIPTION.VESSEL TO PROVIDE SUFFICIENT LIGHT AS ON BOARD FOR NIGHT WORK IF REQUIRED AS IN HOLDS OR DECK.ALL TIME LOST DUE TO FAILURE OF THE SUCH EQUIPMENT TO BE FOR OWNERS ACCOUNT PRORATA TO THE NUMBER OF HOLDS AFFECTED. IN THE EVENT OF VESSEL'S CRANE (WINCHES/DERRICKS) BREAKDOWN AT THE DISCHARGE PORT WHICH CANNOT BE REPAIRED WITHIN ONE SHIFT,

SHIPPERS/RECEIVERS/CHARTERERS HAVE THE OPTION OF
REPLACING THE NON-WORKING CRANE BY SHORE/FLOATING
CRANE WHICH TO BE ARRANGED AND PAID FOR BY THE OWNERS,
IN WHICH CASE TIME WILL COUNT UPON RESUMPTION OF
DISCHARGING IN FULL OR PRO-RATA AS THE CASE MAY BE.

-THE STEVEDORES ALTHOUGH APPOINTED BY CHRS, SHIPPERS,
RCVRS OR THEIR AGENTS TO BE UNDER THE DIRECTION AND
CONTROL OF THE CAPT. ANY STEVEDORE DAMAGE TO BE
REPORTED IMMEDIATELY AND CONFIRMED IN WRITING WITHIN 24
HOURS OF OCCURRENCE, BUT ALWAYS BEFORE DEPARTURE OF
VESSEL FROM THE BERTH OTHERWISE STEVEDORES WILL NOT
ACCEPT ANY CLAIMS. CHRS,  SHIPPERS OR RCVRS SHALL NOT BE
LIABLE FOR THE ACTS AND DEFAULTS OF THE STEVEDORES AT
LOAD/DISCHG PORT(S) INCLUDING ANY/ALL ALLEGED DAMAGE
STEVEDORE DAMAGE TO THE VESSEL. A JOINT SURVEY  TO BE
HELD PRIOR TO  LOADING AND AFTER COMPL OF DISCHG BETW
OWS AND STEVEDORES APPOINTED BY CHRS. THE EXPENSES AT
THE LOADPORT TO BE PAID BY THE CHRTRS/SHIPPERS AND THE
DISCHPORT BY THE OWNERS. ALL  CLAIMS  FOR DAMAGES
ALLEGEDLY CAUSED BY STEVEDORES  TO BE  SETTLED
DIRECTLY  BETWEEN  OWS  AND  STEVEDORES  AT LOAD/DISCHG
PORT(S).  HEVER,CHRS  AGREE TO ASSIST OWS TO THE BEST OF
THIER ABILITIES  IN  RECOVERING  CLAIMS  FOR  PROVEN
DAMAGES  IN CASE THE OWS HV DIFFICULTIES OBTAINING SAME.
DISCHARGE PORT STEVEDORES/RECEIVERS ARE NOT TO BE HELD
RESPONSIBLE FOR HIDDEN DAMAGES ATTRIBUTABLE TO PORT OF
LOADING. ANY CLAIM ADVISED BY OWNER SHALL BE BASED ON A
SURVEY REPORT OF A MUTUALLY AGREED INTERNATIONAL
INDEPENDENT INSPECTION COMPANY.

 -ALL CRANES TO BE ABLE TO WORK ALL HOLDS SIMULTENOUSLY.

 -THE VSL TO SUPPLY POWER AS ON BOARD FREE OF EXPENSE TO
CHRS/STEVEDORES FOR OPERATION OF GRABS DAY AND NIGHT
PER 24 HR PERIOD, IF REQUIRED SIMULTANEOUSLY AT ALL
HATCHES.OWNERS WILL ENDEVOUR TO FIND A VESSEL THAT WILL
MEET THE POWER REQUIREMENTS AT  LOAD/DISCH PORT.

-OWNERS/VESSEL TO GIVE CHRTRS VIA BRS  DAILY UPDATES OF
VSL'S ITINERARY AND ETA LOADPORT (STARTING FROM THE DAY
OWNERS NOMINATE THE PERFORMING SHIP)AND AFTER
COMPLETION OF LOADING, DAILY UPDATES OF ETA DISCHPORT.

-  CHABE - HOWEVER OWNERS ALLOWED TO APPOINT PROTECTIVE
AGENT BENDS.

-  ARBITRATION IN NY / USA LAW

TRADE SANCTIONS CLAUSE
CHARTERERS/OWNERS ARE NOT PERMITTED TO CONCLUDE ANY
CHARTER PARTY DUE TO VARIOUS TRADE SANCTIONS AS
OUTLINED BY THE OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
OF THE US DEPARTMENT OF TREASURY AND EXPORT
ADMINISTRATION REGULATIONS OF THE US DEPARTMENT OF

COMMERCE.

OWNERS CONFIRM THAT THE PERFORMING VESSEL HAS NO
AFFILIATIONS WITH THE NATIONS AND CERTAIN INDIVIDUALS (AS
IDENTIFIED BY OFAC) FROM THE FOLLOWING: NORTH KOREA,
CUBA, CRIMEA, SUDAN, IRAN, SYRIA, BURMA, BELARUS, IVORY
COAST, DEMOCRATIC REP CONGO, IRAQ, ZIMBABWE, WESTERN
BALKAN STATES, LIBERIA (INDIVIDUALS OF THE FORMER
GOVERNMENT OF CHARLES TAYLOR), LIBYA, SOMALIA, YEMEN
AND LEBANON.

AFFILIATIONS INCLUDE: FLAG, INCORPORATION OF HEAD OWNERS,
DISPONENT OWNERS, MANAGEMENT AND BANK ACCOUNTS.

OWNERS ALSO CONFIRM THE VESSEL HAS NOT CALLED NORTH
KOREA/IRAN/CUBA DURING THE LAST 12 MONTHS, NOR HAS THE
SHIP ENGAGED IN ANY NORTH KOREAN/IRANIAN/CUBAN SHIP TO
SHIP TRANSFERS WITHIN THE LAST 12 MONTHS.

- 2.5 PCT BRS USA LLC ON FRT,DEADFREIGHT AND DEMMURAGE TO
BE PAID BY THE OWNERS.

END


B.Regds

**www.brsbrokers.com**

**Jay Jaywant**
Dry Bulk Chartering
T  +1 203-487-7000
M +1 203-918-6945
jay.jaywant.p@brsbrokers.com

BRS USA LLC
850 Canal Street, 3rd Floor, Stamford, CT  USA

***** Email Confidentiality Notice *****

The information contained in this email and its attachments, if any, may be privileged and confidential. If you are not
the intended recipient; you are notified that any retention, disclosure, duplication, dissemination, distribution (in whole
or in part and whether electronically, written and/or orally) or any other unauthorised action in reliance on the content
of this information is strictly prohibited. If you have received this communication in error, please notify the sender
immediately by replying to this email or return this email to it@brsbrokers.com and permanently destroy all copies of
the original message. BRS shall not be liable for the message if unlawfully intercepted, altered or falsified. BRS works
in accordance with the terms and conditions set out in our website www.brsbrokers.com. BRS or one of the group
companies may monitor email traffic data and content for the purposes of security and staff training. Any views or
opinions presented in this email are solely those of the author and do not necessarily represent those of BRS.

CODE NAME:  Gencon

**RECOMMENDED**
Adopted by the Documentary Committee of the
Chamber of Shipping of the United Kingdom

Issued to come into force for fixtures on and after 15th September 1922

# The Documentary Council of the Baltic and White Sea Conference
### (The Baltic and International Maritime Conference)

# UNIFORM GENERAL CHARTER
### AS REVISED 1922

**(only to be used for trades for which no approved form is in force)**

*Stamford, CT, XXXXX, 2021*

| | | |
|---|---|---|
| **Owners** | 1.  IT IS THIS DAY MUTUALLY AGREED between ….. | 1 |
| | *Owners* | 2 |
| | Owners of the ~~steamer or~~ motor-vessel *"Ship" (See Clause 27)* | 3 |
| | ~~of~~ ….. ~~tons gross/net Register and carrying about~~ ….. ~~tons of deadweight cargo,~~ | 4 |
| **Position** | now *trading* ….. | 5 |
| | expected ready to load under this Charter about ….. | 6 |
| **Charterers** | and Messrs. *Boral Industries Inc., 10701 S River Front Pkwy., Suite 300, South Jordan, UT* | 7 |
| | *84095*, as Charterers, | 8 |
| **Where to Load** | That said vessel shall proceed to *one (1) safe berth, one (1) safe port Krishnapatnam. Owners to satisfy themselves regarding the compatibility ship at load port. Owners to satisfy themselves on port restrictions and vessel suitability. Any laytime/demurrage that results from Owners' failure to do so shall be solely for Owners account.* | 9 |
| | ….. ~~or so near thereto as she may safely get and lie~~ | 10 |
| **Cargo** | ~~always afloat,~~ and there load *upto* a full and complete cargo ~~(if shipment of deck cargo~~ | 11 |
| | *27,500 min/max metric tons of bagged flyash in jumbo bags 1.5 metric tons each.* | 12 |
| | ………. | 13 |
| | ………. | 14 |
| | ………. | 15 |
| | ~~(Charterers to provide all mats and/or wood for dunnage and any separations required,~~ | 16 |
| | ~~the Owners allowing the use of any dunnage wood on board if required)~~ which the | 17 |
| | Charterers bind themselves to ship, and being so loaded the vessel shll proceed to | 18 |
| **Destination** | *one (1) safe berth Stockton. Owners to satisfy themselves regarding the compatibility ship at discharge port. Owners to satisfy themselves on port restrictions and vessel suitability. Any laytime/demurrage that results from Owners' failure to do so shall be solely for Owners' account. All dunnage material to be as per regulation in USA and India.* | 19 |
| | | 20 |
| | | 21 |
| | | 22 |
| | ~~as ordered on signing Bills of Lading or so near thereto as she may safely get and~~ | 23 |
| | ~~lie always afloat~~ and there deliver the cargo on *having been* ~~being~~ paid freight – ~~on~~ | 24 |
| | ~~delivered/intaken~~ | |
| | quantity as follows: | 25 |
| **Rate of Freight** | *(See Clause 17)* | 26 |
| | ………. | 27 |
| | ………. | 28 |
| | 2.  Owners are to be responsible for loss of or damage to the goods or for | 29 |
| **Owners' Responsibility Clause** | delay in delivery of the goods only in case the loss, damage or delay has been caused | 30 |
| | by the improper or negligent stowage of the goods (unless stowage | 31 |
| | performed by shippers or their stevedores or servants) or by personal want of due diligence on the | 32 |
| | part of the Owners or their Manager to make the vessel in all respects seaworthy | 33 |
| | and to secure that she is properly manned, equipped and supplied or by the personal | 34 |
| | act or default of the Owners or their Manager. *Stowage to be under Master's supervision and stevedores shall be deemed servants/agents of the Master.* | 35 |

1



FIRST ORIGINAL



|  |  |  |
|---|---|---|
| | And the Owners are responsible for no loss or damage or delay arising from | 36 |
| | any other cause whatsoever, even from the neglect or default of the Captain or crew | 37 |
| | or some other person employed by the owners on board or ashore for whose acts | 38 |
| | they would, but for this clause, be responsible, or from unseaworthiness of the vessel | 39 |
| | on loading or commencement of the voyage or at any time whatsoever. | 40 |
| | Damage caused by contact with or leakage, smell or evaporation from other | 41 |
| | goods *(not including bunkers)* or by the inflammable or explosive nature or insufficient package | 42 |
| | of other goods *(not including bunkers)* | |
| | not to be considered as caused by improper or negligent stowage, even if in fact | 43 |
| | so caused. | 44 |
| **Deviation Clause** | 3.  The vessel has liberty to call at any port or ports in any order, for any | 45 |
| | purpose, to sail without pilots, to tow and/or assist vessels in all situations, and | 46 |
| | also to deviate for the purpose of saving life and/or property. | 47 |
| **Payment of Freight** | 4.  The freight to be paid *as per Clause 17* ~~in cash without discount on delivery of the cargo~~ | 48 |
| | ~~at mean rate of exchange ruling on day or days of payment, the receivers of the~~ | 49 |
| | ~~cargo being bound to pay freight on account during delivery, if required by Captain~~ | 50 |
| | ~~or Owners.~~ | 51 |
| | ~~Cash for vessel's ordinary disbursements at port of loading to be advanced~~ | 52 |
| | ~~by Charterers if required at highest current rate of exchange, subject to two per cent~~ | 53 |
| | ~~to cover insurance and other expenses.~~ | 54 |
| **Loading** | 5.  Cargo to be *loaded as per Clause 20* ~~brought alongside in such a manner as to enable vessel~~ | 55 |
| | ~~to take the goods with her own tackle and to load the full cargo in …..~~ | 56 |
| | ~~running working days. Charterers to procure and pay the necessary men on shore or~~ | 57 |
| | ~~board the lighters to do the work there, vessel only heaving the cargo on board.~~ | 58 |
| | ~~If the loading takes place by elevator cargo to be put free in vessel's holds,~~ | 59 |
| | ~~Owners only paying trimming expenses.~~ | 60 |
| | ~~Any pieces and/or packages of cargo over two tons weight, shall be loaded~~ | 61 |
| | ~~stowed and discharged by Charterers at their risk and expense.~~ | 62 |
| | ~~Time to commence at 1 p.m. if notice of readiness to load is given before~~ | 63 |
| | ~~noon and at 6 a.m. next working day if notice given during office hours after noon,~~ | 64 |
| | The notice to be given to the Shippers, Messrs *(as per Clause 18)* | 65 |
| | ….. | 66 |
| | Time lost in waiting for berth to count as loading time. | 67 |
| **Discharging** | 6.  Cargo to be *discharged as per Clause 20*. ~~received by Merchants at their risk and expense~~ | 68 |
| | ~~alongside~~ | |
| | ~~the vessel not beyond the reach of her tackle and to be discharged in …..~~ | 69 |
| | ~~….. tunning working days. Time to commence at 1 p.m. if notice of readiness to~~ | 70 |
| | ~~discharge is given before noon, and at 6 a.m. next working day if notice given during~~ | 71 |
| | ~~office hours after noon.~~ | 72 |
| | Time lost in waiting for berth to count as discharging time, | 73 |
| **Demurrage** | 7.  ~~Ten running days on demurrage at the rate of~~ *(See Clause 21)* | 74 |
| | ~~per day or pro rata for any part of a day payable day by day to be allowed Merchants~~ | 75 |
| | ~~altogether at ports of loading and discharging.~~ | 76 |
| | 8.  ***Owners shall have a lien on cargo for freight. Charterers shall remain responsible for dead-freight and demurrage incurred at port of loading.*** ~~Owners shall have a lien on the cargo~~ | 77 |
| | ~~for freight, dead-freight, demurrage~~ | |
| | ~~and damages for detention. Charterers shall remain responsible for dead-freight and~~ | 78 |
| **Lien Clause.** | ~~demurrage (including damages for detention), incurred at port of loading.~~ Charterers | 79 |
| | shall also remain responsible for freight and demurrage (~~including damages for detention~~) | 80 |
| | incurred at port of discharge, but only to such extent as the Owners have been | 81 |
| | unable to obtain payment thereof by exercising the lien on the cargo. | 82 |
| **Bills of Lading** | 9.  ~~The Captain to sign Bills of Lading at such rate of freight as presented~~ | 83 |
| | ~~without prejudice to this Charterparty, but should the freight by Bills of Lading~~ | 84 |
| | ~~amount to less than the total chartered freight the difference to be paid to the Cap-~~ | 85 |
| | ~~tain in cash on signing Bills of Lading~~ | 86 |
| **Strike-, War-** | 10.  Strike-Clause, War-Clause and Ice-Clause as below. | 87 |



FIRST ORIGINAL

and Ice-
Clauses

**Cancelling**
**Clause**

11. ***Laydays if required by the Charterers, shall not commence before 0001 hours local time*** 88
***April 8th, 2021, but*** Should the vessel not be ready to load (whether in berth or not) 89
on or before ***2359 hours local time April 15th, 2021.*** (~~Charterers have the option of cancelling this~~ 89
~~contract,~~
~~such option to be declared, if demanded, at least 48 hours before vessel's expected~~ 90
~~arrival at port of loading. Should the vessel be delayed on account of average~~ 91
~~or otherwise, Charterers to be informed as soon as possible, and if the vessel is~~ 92
~~delayed for more than 10 days after the day she is stated to be expected ready to~~ 93
~~load, Charterers have the option of cancelling this contract, unless a cancelling date~~ 94
~~has been agreed upon.~~ 95

**General**
**Average**

12. General average to be settled ***in New York*** according to York-Antwerp Rules, ***1994 or any*** 96
***amendments thereto***, 96
proprietors of cargo to pay the cargos share in the general expenses even if same have 97
been necessitated through neglect or default of the Owners' servants (see Clause 2). 98

**Indemnity**

13. Indemnity for non-performance of this Charterparty, proved damages, not 99
exceeding estimated amount of freight 100

**Agency**

14. In every case the Owner shall appoint his own Broker or Agent both 101
at the port of loading and the port of discharge. 102

**Brokerage**

15. ***2.5%*** brokerage on the freight, deadfreight and demurrage earned is due to ***BRS USA LLC*** 103
***to be paid by Owners.*** 104
~~In case of non-execution at least 1/3 of the brokerage on the estimated amount~~ 105
~~of freight and dead- freight to be paid by the Owners to the Brokers as indemnity for~~ 106
~~the latter's expenses and work. In case of more voyages, the amount of indemnity to~~ 107
~~be mutually agreed.~~ 108

**GENERAL STRIKE CLAUSE** 109

Neither Charterers nor Owners shall be responsible for the consequences of any strikes or 110
lock-outs preventing or delaying the fulfilment of any obligations under this contract. 111

If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when 112
vessel is ready to proceed from her last port or at any time during the voyage to the port or ports 113
of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they 114
to reckon the Laydays as if there were no strike or lock-out. Unless Charterers have given such 115
declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of 116
cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, 117
(freight payable on loaded quantity only) having liberty to complete with other cargo on the way 118
for their own account. 119

If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's 120
arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall 121
have the option of keeping vessel waiting until such strike or lock-out is at an end against paying 122
half demurrage after expiration of the time provided for discharging, or of ordering the vessel to 123
a safe port where she can safely discharge without risk of being detained by strike or lock-out. 124
such orders to be given within 48 hours after Captain or Owners have given notice to Charterers 125
of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all 126
conditions
of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight 127
as if she had discharged at the original port of destination, except that if the distance of the sub- 128
stituted port exceed 100 nautical miles, the freight on the cargo delivered at the substituted port to 129
be increased in proportion. 130

**GENERAL WAR CLAUSE** 131

~~If the nation under whose flag the vessel sails should be engaged in war and the safe~~ 132
~~navigation of the vessel should thereby be endangered either party to have the option of cancelling~~ 133
~~this contract, and if so cancelled, cargo already shipped shall be discharged either at the port of~~ 134
~~loading or, if the vessel has commenced the voyage, at the nearest safe place at the risk and~~ 135



FIRST ORIGINAL

expense of the Charterers or Cargo Owners. — 136
If owing to outbreak of hostilities the goods loaded or to be loaded under this contract or — 137
part of them become contraband of war whether absolute or conditional or liable to confiscation or — 138
detention according to international law or the proclamation of any of the belligerent powers each — 139
party to have the option of cancelling this contract as far as such goods are concerned, and contra- — 140
band goods already loaded to be then discharged either at the port of loading, or if the voyage — 141
has already commenced, at the nearest safe place at the expense of the Cargo Owners. Owners to — 142
have the right to fill up with other goods instead of the contraband. — 143
Should any port where the vessel has to load under this Charter be blockaded the con- — 144
tract to be null and void with regard to the goods to be shipped at such port. — 145
No Bills of Lading to be signed for any blockaded port, and if the port of destination — 146
be declared blockaded after Bills of Lading have been signed, Owners shall discharge the cargo — 147
either at the port of loading, against payment of the expenses of discharge, if the ship has not sailed — 148
thence, or, if sailed at any safe port on the way as ordered by Shippers or if no order is given at — 149
the nearest safe place against payment of full freight. — 150

**GENERAL ICE CLAUSE** *(See Clause 38)*
**PORT OF LOADING**
a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to — 153
proceed from her last port or at any time during the voyage or on vessel's arrival or in case — 154
frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave — 155
without cargo, and this Charter shall be null and void. — 156
b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to — 157
leave, he has liberty to do so with what cargo he has on board and to proceed to any other — 158
port or ports with option of completing cargo for Owners' benefit for any port or ports in- — 159
cluding port of discharge. Any part cargo thus loaded under this Charter to be forwarded to — 160
destination at vessel's expense but against payment of freight, provided that no extra expenses — 161
be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if — 162
lumpsum), all other conditions as per Charter. — 163
c) In case of more than one loading port, and if one or more of the ports are closed by ice, — 164
the Captain or Owners to be a liberty either to load the part cargo at the open port and — 165
fill up elsewhere for their own account as under section b or to declare the Charter null and — 166
void unless Charterers agree to load full cargo at the open port. — 167
d) This Ice Clause not to apply in the Spring. — 168
**PORT OF DISCHARGE** — 169
a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall — 170
have the option of keeping vessel waiting until the re-opening of navigation and paying — 171
demurrage, or of ordering the vessel to a safe and immediately accessible port where she can — 172
safely discharge without risk of detention by ice. Such orders to be given within 48 hours — 173
after Captain or Owners have given notice to Charterers of the impossibility of reaching port of — 174
destination. 
b) If during discharging the Captain, for fear of vessel being frozen in deems it advisable to leave, — 176
he has liberty to do so with what cargo he has on board and to proceed to the nearest ac- — 177
cessible port where she can safely discharge. — 178
c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and — 179
vessel shall receive the same freight as if she had discharged at the original port of destination, — 180
except that if the distance of the substituted port exceeds 100 nautical miles, the freight — 181
on the cargo delivered at the substituted port to be increased in proportion. — 182

*Clauses 17 through 50, both inclusive, and P & I Bunker Deviation Clause, 1948, War Risk
Clause, Water Pollution Clause, New Jason Clause, Both-To-Blame Collision Clause, General
Clause Paramount (1982), U.S. Customs Advance Notification/AMS Clause for Voyage Charter
Parties, as attached hereto, have been mutually agreed upon and are deemed to be fully
incorporated into this Charter Party and form and integral part of same.*

FIRST ORIGINAL

*OWNERS:*                                    *CHARTERERS:*



FIRST ORIGINAL

ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

**17. Laycan**
April 8 - April 15, 2021

**18.**
Freight: USD XXXX per metric ton FIOS basis 1/1.

95% freight paid to be paid on bill of lading weight within 5 banking days after signing/releasing clean on board bill(s) of lading marked 'freight payable as per C/P. Charterer's option to issue bill(s) of lading marked 'freight prepaid' in which case same to be released promptly on receipt of bank's confirmation that freight has been irrevocably received.

Owner's banking details:

Please reference invoice number and/or vessel name.

If only mate's receipt(s) will be issued at loading port, then Charterers have the option to have original bills of lading issued by their agent after Owner's approval of the draft. Alternatively, if bills of lading issued at loading port then Charterers have the option to have the 1st set exchanged via their agent.

In case original bills of lading are not available on vessel's arrival at discharging port, then Owners to deliver the cargo into agents/customs custody against LOI in Owner's standard P&I wording signed by Charterers only.

In case of discrepancy between shippers/consignee/notify party in mate's receipt and bill of lading, Charterers to provide LOI in standard P+I Club wording.

Carrying 1 original bill(s) of lading onboard is always subject to head owner's approval.

Clean on board Congen bill(s) of lading.

**19.**
Owners/vessel to give Charterers via BRS daily updates of vessel's itinerary and ETA load port (starting from the day Owners nominate the performing ship) and after completion of loading, daily updates of ETA discharge port.

**20.**
Loading Terms:
Laytime shall commence at 08.00 hours on next working day after Notice of Readiness (NOR) tendered and accepted. NOR to be tendered/accepted during office hours 0900 to 1700 hours Monday/Sunday excluding BIMCO and local holidays at load port in writing/telex/fax when vessel is fully berthed and load/discharge-ready in every respect. If vessel only partially load ready and Charterers option to commence loading, time to count pro-rata until vessel is officially passed in all holds.

Prior time if used not to count at load port.

Time lost for opening and closing of hatches and preparing the vessel until she is in all respects ready for loading shall not count as laytime even if vessel is on demurrage. Time actually used for steaming from pilot station to the berth at load port not to count as laytime even if vessel on demurrage.

Vessel is to present Notice of Readiness with dry holds and free of any foreign material suitable for the carriage of the designated cargo accompanied by certificate issued by Charterer's independent surveyor certifying same. Cost of certificate and surveyor's fee to be evenly split between Owners and Charterers.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

FIRST ORIGINAL

Provided local regulations permit, shifting alongside the berth will be accomplished by the vessel's crew and equipment at the vessel's expense. Otherwise, shifting for shippers account unless port authorities order vessel to move in cases of typhoons or other severe weather circumstances in which case this time/expense will be to Owner's account even if vessel is on demurrage. The vessel will provide free use of cranes, power and light during twenty-four (24) consecutive hours until completion of the loading of the vessel. The master shall co-operate reporting information on daily loading operations to the Charterers and/or agent.

If the vessel arrives Krishnapatnam prior to the nominated laycan, shipper has the right not to commence the loading of the vessel. Provided the shippers decide to load the vessel ahead of the laycan, then laytime shall commence to count upon start of loading operation.

Laytime shall not count when loading is prevented by bad weather conditions, during which cargo or loading operation safety cannot be ensured even if vessel is already on demurrage.

Time of shifting from the anchorage or place of waiting to the loading berth shall not be counted as laytime even if on demurrage.

Actual time lost at the loading port in obtaining free pratique or customs clearance shall not be counted as laytime even if vessel is on demurage.

Actual time lost at the loading port due to initial draft survey, final draft survey and hold inspection shall not be counted as laytime even if vessel is already on demurrage unless loading operations have commenced, in which case actual time used to count as laytime. Time used for intermittent draft surveys requested by the shipper to count as laytime.

At load port draft checks requested by vessel/master never to count.

If loading operations are suspended due to vessel's breakdown, vessel's ballasting or de-ballasting operations, such time shall not count as laytime even is vessel is on demurrage.

If the port authorities or the harbor master refused to enter the vessel due to bad weather, lack of visibility, high winds or any other reason regarding the safety of the crew or vessel, the time lost occasioned thereby shall not be counted as laytime even if vessel is on demurrage.

In the event of the breakdown of any of vessels and other ship equipment necessary for the loading, shifting or loading of the cargo, time shall be adjusted accordingly. Extra costs arising therefrom shall be paid by the owner.

Time to stop counting upon successful completion of loading operations (time for draft survey/hold inspection not to count).

Discharging terms:
==Laytime shall commence at 08.00 hours on next working day after Notice of Readiness (NOR) tendered and accepted. NOR to be tendered/accepted during office hours 0900 to 1700 hours Monday/Sunday excluding BIMCO and local holidays at discharge port in writing/telex/fax when vessel is fully berthed and discharge ready in every respect. If vessel only partially discharge ready and Charterers option to commence discharging, time to count pro-rata until vessel is officially passed in all holds.==
==Prior time if used not to count at discharge port.==

Time lost for opening and closing of hatches and preparing the vessel until she is in all respects ready for discharging shall not count as laytime even if vessel is on demurrage. Time actually used for steaming from pilot station to the berth at discharging port not to count as laytime even if vessel on demurrage.

Time shifting from anchorage or waiting place to berth not to count as laytime.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021


FIRST ORIGINAL

Only if the discharging berth is occupied, master may warrant that the vessel is in all respects ready to load and may tender the N.O.R. to load from any usual waiting place, whether in port or not (wipon), whether in berth or not (wibon), whether in free pratique or not (wifpon), whether in custom clearance or not (wiccon).

Time of shifting from anchorage to discharging berth and/or clearing customs and/or for obtaining free pratique not to count even if the vessel is already on demurrage.

Time for Coast Guard Security clearance not to count as laytime or turn time even if vessel is on demurrage. If dock is available but port authorities refuse to enter the vessel due to bad weather, lack of visibility or any other physical reason regarding the safety of the vessel, crew or the port, any time lost waiting for port authorities approval for entering the port will not count as laytime even if vessel is on demurrage.

Discharging time ceases to count upon completion of discharging cargo and cargo holds have been shovel cleaned and all discharging equipment including bobcats, has been taken out of cargo holds.

The master, officers and crew will render customary assistance in preparing the vessel for discharging without delay and keeping delays during cargo operations to a minimum.

Master and crew to be fully cooperative in shifting vessel alongside the reporting to Charterers/agents information on loading and discharge daily operations, time for shifting to be on Charterers/Receivers account.

Master and crew to cooperate with buyer/receivers to avoid dust and spillage but buyer/receivers to be responsible for the handling and discharging of flyash on board to satisfy any environmental authorities' regulations.

Laytime non-reversible between load/discharge port.

If free pratique is rescinded once the vessel is alongside due to Owner's negligence or crew sickness/illness, then laytime to cease until the matter is rectified.

If by reasons of nature (bad weather, hurricanes, swell, etc.) the vessel cannot enter and/or leave the port and/or has to wait in order to proceed her voyage, than all such time lost to count as half time.

Time used for intermediate draft survey not to count as laytime.

At discharge port, draft checks requested by vessel/master never to count.

At all times and at Charterer's/Receiver's request, Owners are responsible for providing, free of charge, qualified crane operators, as long as the port authorities permit the same, to operate vessel's safe cranes at rated capacities, in order to assist lifting payloaders on/off vessel provided local regulations permit otherwise same to be carried out by shippers/ receiver's stevedores.

Ship crew will prepare for immediate ballasting conditions upon arrival to allow for optimum and expeditious discharging conditions. Vessel shall be in full compliance with all applicable ballast regulations and any expenses/time lost due to same shall be solely for Owners' account.

Ship's crew must inform Receivers prior to any ship discharging about any tanktop obstructions or protrusions that would damage ship unloading equipment.

Time to stop counting upon successful completion of unloading operations (time for draft survey/hold inspection not to count).



**21. Quantity/Cargo Lots**
27,500 min/max metric tons of bagged flyash in jumbo bags 1.5 metric tons each.

Load:
One (1) safe berth Krishnapatnam.
2,500 metric tons per 24 consecutive hours or pro rata SHINC (excluding super holidays).

Discharge:
One (1) safe port, one (1) safe berth Stockton.
5,000 metric tons per 24 consecutive hours or pro rata Saturday PM, Sundays, Holidays excluded (excluding super holidays in USA).

Shifting time from anchorage to load/discharge berth not to count as laytime or turn time or time on demurrage both ends even if vessel is on demurrage.

Owners to satisfy themselves of all applicable port restrictions and regulations at load/discharge ports.

Super holidays in all ports mentioned always to be excluded unless used, in which case time actually used to count.


**22.**
Demurrage rate: USD XXXX per day pro rata/half despatch (50%) both ports waiting time saved both ends. Settlement of demurrage/despatch shall take place by email within 30 days from receipt of the relevant documents, namely invoice, time sheet and statement of facts duly signed by the master of the vessel and the agent at the loading/discharging port.

Laytime is non-reversible between the load and discharge ports.

Time lost in shifting from waiting place to berth shall not count as laytime or time on demurrage both ends.

Time used for opening and closing of vessel's hatches shall not count as laytime both ends. If loading operation is suspended due to vessel's ballasting or de-ballasting or for reasons of trimming or listing, such time not to count as laytime or time on demurrage both ends even if on demurrage.

Any time for warping shall be for Owners account. Any stoppages requested in writing by the vessel shall not count as loading time or time on demurrage.


**23.**
Vessel is to supply free the use of lights as on board which shall be sufficient to carry on night work at all hatches, if required.

At loading and discharging ports, vessel is to give free the use of all vessel's cargo handling gear and sufficient power to operate all the gear simultaneously as required.

If vessel's cargo gear, hatch covers, mooring winches, etc. are found not to be in good working condition at either load or discharge port, Owners to be responsible for any directly related expenses and delays incurred, including stevedore standby time up to maximum 1 shift, due to failure of same.

In the event of gears breakdown at the load port for more than 24 consecutive hours, Charterers shall have the option to hire shore crane(s), if available. Charterers/shippers/receivers have right to use vessels derricks/winches upto their lifting capacity as per vessel's description. Vessel to provide sufficient light as on board for night work if required as in holds or deck. All time lost due to failure of the such equipment to be for Owner's account pro rata to the number of holds affected. In the event of vessel's



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

crane (winches/derricks) breakdown at the discharge port which cannot be repaired within one shift, shippers/receivers/Charterers have the option of replacing the non-working crane by shore/floating crane which to be arranged and paid for by the Owners, in which case time will count upon resumption of discharging in full or pro-rata as the case may be.

**24.**
Overtime is subject to the following conditions:
A) if ordered by the Owners, all overtime for stevedore labor, crane operators and shore personnel necessary for the operation of loading and/or discharging and placing and/or taking away cargo from alongside the vessel shall be for Owners' account.
B) If ordered by the Charterers, all overtime outlined in paragraph (A) above shall be for Charterers' account.
C) All Officers and crew overtime is to be for Owners' account regardless of who orders the overtime.
D) If Owners elect to work overtime, Charterers shall have the option to refuse if the shore labor or stevedores decline to work for any reason beyond the control of the Charterers.
E) If ordered by the port or terminal authorities or other competent authority, all overtime expenses shall be for the Charterers' account.

**25.**
It is understood Owners are responsible to pay for usual/customary port charges/expenses/vessel's disbursements, as well as ship's husbandry matters. Any extra expenses incurred above the agreed Capped D/A rates to be for Charterers account. Husbandry matters/Owner expenses always to be for Owners account.

**26.**
Deleted

**27.**
Owners are to arrange payments of estimated disbursements at loading and discharging ports in advance.

**28. Vessel Description**
Vessel TBN

Actual performing vessel to be nominated latest 7 days prior commencement of laycan.

Charterers to have 1 (one) business day to approve the nomination.

Performing vessel to be/have:
- max 20 yrs.
- performing vessel to have minimum 4 cranes of 30 mt lifting, same to service all holds where cargo is stowed, each crane serving all hatches simultaneously and independently. Owners warrant that vessel's safe working load can maintain this lifting capacity.
- classed highest Lloyds or equivalent by a member of the IACS for entirety of voyage.
- holds to be free of hindrances, obstacles, cargo battens, batten clips and horizontal metal slabs.
- tanktops to be flush without obstructions that could hinder the operation of front loader or bulldozers.
- cables/pipes to be protected so that it is impossible for discharging equipment to contact same.
- deck to be free of car decks, timber racks, permanent stanchions, unless they are collapsible and similar hindrances except fixed stanchions in the way of the crane house.
- holds to be fully accessible when hatches are fully open. Tank top smooth and free of any obstructions of any type. Tunnels, exposed cables and pipes shall be entirely protected.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

FIRST ORIGINAL

- vessels are suitable for working of rubber-tired bulldozers, forklifts and/or payloaders in the vessel's hold not exceeding vessel's tanktop strength.
- no duct tape, masking tape and/or burlap or any other materials to be used inside holds where it could come into contact with bulk cargo and/or any unloading equipment. (Not applicable for this cargo)
- holds to be watertight.
- fully ISM and P&I covered for the duration of the voyage.
- P&I Club International Group members only.
- no centerline beam/bulkheads/fittings/obstructions in holds.
- suitable in all respects for all load and discharge port. The vessel should be capable of using spreader bars attached to vessels cranes for discharge.
- no twin hatches.
- box shaped vessel or to be box shaped in holds 2/3/4.
- vessel has Macgregor type or similar folding fore and aft hatch covers.
- vessel to be fully ITF or equivalent.

Owners to confirm:
- the vessel is classed 100A1 Lloyds highest or equivalent with a registry being a member of the International Association of Classification Societies with no subjects or conditions imposed by Class and in every way fitted and suitable for the intended voyage with all certificates current and valid.
- vessel has Macgregor type or similar folding fore and aft ha covers.
- vessel has cranes work simultaneously and serve all hatches available for cargo.
- vessel has no centerline bulkhead or stanchions or any other obstructions in the holds.
- vessel's ballast tanks to maintain the same ballast condition prior to commencement of loading and on completion of discharge.
- vessel capable of deballasting fully within 24 hrs.
- all cranes to be able to work all holds simultaneously.

Owners warrant the following (a-p)

A: vessel is a single deck self-trimming, non-logger fitted, bc with engine/bridge aft/steel floored suitable for grabs discharge and suitable in all respects to carry Charterers' intended cargo.

B: vessel gear is capable of loading minimum 30mt safe working load simultaneously from 4 cranes and 4 grabs. Charterers to have full use of vessels gear including grabs if vessel fitted with same.

C: vessel has no cargo battens in holds and no horizontal corregations, no centreline beam or bulkhead or container fittings, no batten clips and horizontal metal slabs.

D: vessel is classed highest Lloyds or equivalent with a full membership of the international association of classification societies and will remain so for the duration of this cp

E: vessel is fully suitable to trade all countries/cargoes allowed under the CP/ITF fitted or equivalent/ISM compliant.

F: vessel is fully covered/entered with a member of the IGP&I (international group of p and i clubs) - pls advise Name and hand m insurance (pls advise H+M value) and will remain so throughout this charter.

G: vessel is free of Asian gypsy moth larvae/eggs, has a valid non AGM certificate. If vessel has called any AGM high risk ports and has not failed any AGM inspection the past 12 month.

I: vessel is suitable for loading/discharging using electro-hydraulic grabs, payloaders or bulldozer or similar equipment in accordance with tanktop strengths and cranes safe working load.

J: any warranted speed and consumption figures given in vessels description to be valid from delivery and throughout the entire duration of the charter period.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

**FIRST ORIGINAL**

K: vessel/crew will comply with all voluntary ballast water exchange programs and comply with all relevant regulations under Marpol.

L: vessel has all latest required, valid and up to date certificates on board valid throughout this charter.

M: vessel has onboard 8 coil mooring rope of 220 mtr each one & 6 coil of mooring rope is less than 200 mtr or similar to keep the vessel safely alongside at load/discharge port.

N: vessel not to have called any country banned by un that will inhibit/restrict vessel's worldwide trading.

O: vessel has no permanent stanchions on deck and free of any car decks and timer racks.

P: vessel's holds/hatches to be watertight as determined by shippers' inspector hose-test or ultrasonic test. Owns have the option to apply ramneck tape to a specific hatch or all hatches if necessary, at Owner's expense.

Charterers option to run vessel at eco speed 40%/50%/60%/70%/80% MCR, but always within engine makers specifications. Owners to provide engine makers specification on eco speed on request. As per CP.

Charterers have the right to send their representative(s) on board the vessel to obtain copies of the engine/deck logbooks, access all parts of the vessel and obtain information from the master/officers as necessary.

Owners details:
Owner

Owners warrant that at all times during the performance of this charter, the vessel shall strictly adhere to and conform to the requirements of the ISM code and shall be in possession of a valid Safety Management Certificate (SMC). Owners further warrant that at all times during the performance of this charter, the Owner or the manager shall comply with the provisions of the ISM code and be in possession of a document of compliance. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers, agents and/or any authorities requiring same. The Owners/managers are to be responsible for any and all costs and consequences arising as a result of non-compliance with foregoing.


**USCG Clause**
Owners confirm that the vessel is not entered on the USCG list due to vessel, flag, Ownership, classification, vessel's boarding history, outstanding items noted during previous USCG inspections or due to any cause whatsoever arising from the terms/conditions of U.S. Homeland Security rules/ regulations/legislation. In case the vessel is detained by any competent US authority due to the aforementioned causes or any new incidents involving competent U.S. authorities. Owners are to be responsible for any/all expenses involved, and if the vessel is prevented from carrying out loading/discharging operations or from entering/leaving port(s) then time not to count.


**US Trade Unique Bill Of Lading Identifier Clause**
The Owners warrant that as of March 04/04 they will have an International Carriers Bond filed with US Customs. In addition, the Owners warrant that they will have a valid unique bill of lading identifier (SCAC code) for use on bills of lading for cargo to and from the U.S.A. as required by U.S customs. Non-compliance with the provisions above shall amount to a breach of warranty for the consequences of which the Owners shall be liable and shall hold the Charterers harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

Owners warrant the vessel has a valid International Ship Security Certificate (ISSC) onboard. Any time lost/expenses incurred as a result of Owners' violation of this clause to be for Owners' account.

The vessel to have in possession all necessary certificates for hull, machinery, equipment, class, etc. for the duration of this voyage.

## 29. Trade Sanctions Clause
Charterers/Owners are not permitted to conclude any charter party due to various trade sanctions as outlined by the Office of Foreign Assets Control (OFAC) of the U.S. Department of Treasury and Export Administration regulations of the U.S. Department of Commerce.

Owners confirm that the performing vessel has no affiliations with the nations and certain individuals (as identified by OFAC) from the following: North Korea, Cuba, Crimea, Sudan, Iran, Syria, Burma, Belarus, Ivory Coast, Democratic Rep Congo, Iraq, Zimbabwe, Western Balkan States, Liberia (individuals of the former government of Charles Taylor), Libya, Somalia, Yemen and Lebanon.

Affiliations include: flag, incorporation of head owners, disponent owners, management and bank accounts.

Owners also confirm the vessel has not called North Korea, Iran or Cuba during the last 12 months, nor has the ship engaged in any North Korean ship to ship transfers within the last 12 months.

## 30.
Any extra insurance on cargo due to vessel's age and/or flag and/or class and/or Ownership is to be for Owners' account; such insurance shall be covered by Charterers for Owners' account and shall be deducted from the freight. However, Charterers confirm no extra insurance on this cargo for vessels under 20 years of age.

## 31.
The stevedores although appointed by Charterers, shippers, receivers or their agents to be under the direction and control of the Master. Stevedores shall be the servants/agents of the Master.

Any stevedore damage to be reported immediately and confirmed in writing within 24 hours of occurrence, but always before departure of vessel from the berth otherwise stevedores will not accept any claims. Charterers, shippers or receivers shall not be liable for the acts and defaults of the stevedores at load/discharge port(s) including any and all alleged stevedore damage to the vessel.

A joint survey to be held prior to loading and after completion of discharge between Owners and stevedores appointed by Charterers. The expenses at the load port to be paid by the Charterers and the discharge port by the Owners. All claims for damages allegedly caused by stevedores to be settled directly between Owners and stevedores at load/discharge port(s). However, Charterers agree to assist Owners to the best of their abilities in recovering claims for proven damages in case the Owners have difficulties obtaining same.

Discharge port stevedores/receivers are not to be held responsible for hidden damages attributable to port of loading. Any claim advised by owner shall be based on a survey report of a mutually agreed international independent inspection company.

At load/discharge port while initial/final draft surveys are ongoing, the master will not transfer any quantity of ballast or fuel to assist surveyors in obtaining the most accurate calculations.

If the vessel calls at any U.S. port for the purpose of loading or discharging cargo and/or embarking passengers, vessel's cargo gear and all other equipment shall comply with the regulations established by



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

FIRST ORIGINAL

U.S. Public Law 85-742, Part 9 (Safety and Health Regulations for Longshoring) as currently in effect and local/national regulations. If shore labor are not permitted to work due failure of the master and/or Owners' agents to comply with the aforementioned regulations, any delay resulting therefrom shall be for Owners' account.

**32.**
The Both-to-Blame Collision Clause, Chamber of Shipping War Risk Clauses Nos. 1 and 2, P&I Bunkering Clause, New Jason Clause and the Water Pollution Clause, as attached hereto, are to be considered as part of this Charter Party.

**33.**
With respect to the shipment, carriage and discharge of the cargo, whether or not a Bill of Lading or similar document of title is issued or regulates the relations between the carrier and holder of same , this Charter Party shall have the effect subject to the provisions of any legislation incorporating the Rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading dated Brussels, August 24th, 1924 (The Hague Rules) or those Rules as amended by the Protocol signed at Brussels, February 23rd, 1968 (the Hague Visby Rules) and which is compulsorily applicable to the contract of carriage contained therein. If no such legislation is compulsorily applicable, The Hague Rules or, if applicable, The Hague Visby Rules as enacted in the country of the port of loading shall apply. When no such enactment is in force in the country of the port of loading, the corresponding legislation of the country of the port of discharge shall apply and in the absence of any such legislation, the terms of the 1924 Convention, as amended by the 1968 Protocol shall apply.

**34.**
CP date to be inserted on the Bills of Lading.

**35. Force Majeure Clause**
Neither the vessel, her Master or Owners, nor the Charterers or Receivers shall be responsible for loss of or damage or delay to or failure to supply, load, discharge or deliver the cargo arising or resulting from: Acts of God, Act of War, Act of public enemies, pirates or assailing thieves, arrest or restraint of princes, rulers or people; seizure under legal process, provided bond is promptly furnished to release the vessel or cargo; floods; fires; blockages; riots; insurrections; Civil Commotions; earthquakes; explosions; preferences granted to or at the request of any government or agency thereof; failure of supply; curtailments/power supply due to a blackout at discharge.

**36. Arbitration Clause**
All disputes arising out of this contract or under the Bill of Lading issued shall be arbitrated at New York in the following manner; and be subjected to New York, US Law; one arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the Court. Such arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

For disputes where the total amount claimed by either party does not exceed ONE HUNDRED THOUSAND DOLLARS ($100,000) U.S. Currency, or amount as mutually agreed, the arbitration may be conducted in accordance with the Simplified Arbitration Procedure of the Society of Maritime Arbitrators. Inc.

**37.**
Full tonnage is entered and will remain entered during the currency of the Charter Party with a recognized P&I Club with respect to full P&I coverage.



FIRST ORIGINAL

**38. Trim Clause**

Vessel will not be accepted at the loading port if the vessel's trim exceeds her Trim Correction Table. Upon berthing at the loading port all full ballast tanks are to be stripped, unless otherwise agreed elsewhere in this Charter Party. The vessel is not to fill, empty or transfer to tank or any other compartments, any fresh water, ballast or bunkers while surveyors are taking draft readings and/or tank soundings.

Vessel will present a certified calibration scale for all tanks, including fore and aft peak tanks, double-bottom tanks, deeptanks and wingtanks. Plimsoll marks, draft marks forward, aft and amidships on both sides of the vessel are to be clearly cut and marked on shell planting. Each vessel is to furnish a Capacity Plan and Displacement Scale and same are to be certified by the Master as to their accuracy at the time of loading.

Any extra costs incurred and/or time lost by the vessel's failure to comply with this clause shall be for the Owners' account.
The Master or his authorized representative is to present to the dockmaster and the Charterers' Agents at the loading port a loading plan by compartment and on completion of loading a calculation of the vessel's salt water arrival draft at the next discharging port based on estimated bunker and water consumption and anticipated ballast changes for trim purposes.

**39.**

Any dunnage/lashing/securing materials to be provided by Charterers/shippers at their expense.

Cargo to stowed/secured/lashed to master's satisfaction which not to be unreasonable.

All dunnage material to be as per regulation in USA and India.

**40.**

Charterers have the right to conduct a hose test or ultrasonic test to check the integrity of the vessel's hatches prior to commencement of loading of the cargo for the voyage. Owners are to ensure that proper maintenance is being conducted to ensure the hatch covers remain watertight. If the vessel fails the ultrasonic test or hose test, then the time & expense to be for Owner's account even if the vessel is on demurrage. Owners have the option to apply ramneck tape to a specific hatch or all of the hatches if necessary, at their expense.

**41. ISPS Clause for Voyage Charter Parties**

(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021



FIRST ORIGINAL

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Standard port tariffs for security are not to be construed as expenses under the ISPS clause and that all standard charges (including security) for cargo/wharfage are for Charterers' account and all standard charges (including all security expenses) for dockage are for Owner's account.

**42.**
Any taxes, dues and charges on cargo for Charterers/shippers account.

Any taxes, dues (any security charges at the port) and charges including any ISPS charges on the ship and/or freight including any taxes and dues assessed/levied on the cargo which usually form part of normal port disbursements are for Owner's account.

**43.**
This trade, negotiations and fixture to be kept strictly private and confidential.

**44.**
Should the vessel be seized or detained by any authority or by legal process, laytime shall cease from the time of her seizure or detention until the time of her release. Any and all extra proven expenses thereby incurred due to the ships seizure or detention including stevedore standby time up to max 1 shift, to be for Owners' account.

**45.**
Performing vessel(s) always to be in conformity with applicable United States law, including restrictions imposed by the U.S. Coast Guard, environmental and ballast water regulations, U.S. Treasury Department, Office of Foreign Assets Control (OFAC) and the U.S. Commerce Department, Bureau of Industry and Security (BIS) and United Nations proclamations prohibiting certain flag/Ownership/management from participating in trade covered by this charter. Owners responsible for all cost/consequences if in violation of this warranty. Charterers also confirm that they are in full compliance with this clause.

**46.**
In the event the vessel/cargo is liened or arrested during the currency of this charter party (or after completion of discharge in respect of the cargo) the Owners are to take immediate action to release



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

vessel/cargo from any such lien or arrest and to remain fully responsible. Charterers will not be held responsible for any costs associated with the lien/arrest that has been attached to the ship and will be held harmless. If the arrest/lien lasts more than 15 days the Owners to promptly replace the vessel with a similar substitute vessel.

**47.**
Freight beneficiary of this charter party: if freight beneficiary is different than the Owners/disponent Owners of the vessel, then "written declaration/no objection letter" from head Owners/disponent Owners to be asked for Charterers paying the freight to the nominated "freight beneficiary" in accordance with OFAC clause which is as incorporated in the charter Party.

**48.**
Vessel not to have called at any port or place where Asian gypsy moth activity is present in the last 24 months and is free of any Asian gypsy moth egg or larvae or any form of gypsy moth life and is not on USA/Canadian blacklist. In case vessel has called at such ports in last 24 months, Owners to provide a valid AGM free certificate and guarantee that vessel is free from any infestation.

**49.**
The vessel to supply power as on board free of expense to Charterers/stevedores for operation of grabs day and night per 24 hour period, if required simultaneously at all hatches. Owners will endeavour to find a vessel that will meet the power requirements at load/discharge port.

**50. COVID 19 Clause**
Load port:
In the event that free pratique is not granted on arrival to the port in connection with the Covid 19 and/or the vessel is subject to a quarantine, NOR to remain valid for cancelling purposes but time not to count until the end of quarantine. However, Charterer's option to cancel the charter if the vessel falls 5 day beyond laycan due to quarantine restrictions only.

Discharge port:
NOR can be tendered whether in berth or not, whether in port or not, whether in free pratique or not, whether customs cleared or not. In the event that free pratique is not granted on arrival in connection with the coronavirus and/or the vessel is subject to a Covid 19 quarantine, NOR is not affected but time is not to count until the end of quarantine and the vessel is granted free pratique.

**P & I Bunker Deviation Clause, 1948**
The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any ports or port whatsoever whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in this Charter and there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks, deep tanks, and any other compartment in which oil can be carried whether such amount is or is not required for the Chartered voyage.

**War Risk Clause**
1. No bills of Lading to be signed for any blockaded port and if the port of discharge be declared blockaded after Bills of Lading have been signed, or if the port to which the ship has been ordered to discharge either on signing Bills of Lading or thereafter be one to which the ship is or shall be prohibited from going by the Government of the Nation under whose flag the ship sails or by any other Government, the Owner shall discharge the cargo at any other port covered by the Charter Party as ordered by the Charterers (Provided such other port is not a blockaded or prohibited port as above mentioned) and shall



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

FIRST ORIGINAL

be entitled to freight as if the ship had discharged at the port or ports of discharge to which she was originally ordered.

2. The ship shall have liberty to comply with any orders or directions as to departure, arrival routes, ports of call, stoppages, destination, delivery or otherwise howsoever given by the Government of the Nation under whose flag the vessel sails or any department thereof, or any person acting or purporting to act with the authority of such Government or of any department thereof, or by any committee or person having, under the terms of the War Risk Insurance on the ship, the right to give such orders or directions and if by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed a deviation, and delivery in accordance with such orders or directions, shall be fulfillment of the contract voyage and the freight shall be payable accordingly.


**Water Pollution Clause**

Notwithstanding any terms or conditions stated elsewhere in this Charter Party, it is warranted that during the currency of this Charter the Owners will comply fully with the United States Oil Pollution Act of 1990, the Federal Water Pollution Control Act and the Comprehensive Environmental Response and Liability Act as amended and any subsequent amendments to these Acts, any rules and/or regulations issued thereunder any federal or state legislation enacted with respect to oil pollution (such expression to include any rules and/or regulations issued thereunder) by any Government Department Agency thereof or other authority, the Australian Protection of the Sea (Prevention of Pollution from Ships) Act 1983 and the amendments thereto, also the International Convention on civil Liability for Oil Pollution Damage 1969 and the amendments thereto. Owners will also comply fully with all other local applicable rules and regulations relating to water pollution as dictated by the voyage. Should any delay to the vessel occur from Owners' failure to comply with the said acts, rules, regulations or oil pollution legislation, laytime will cease for the time lost thereby. The Owners hereby agree to pay all extra expenses and to indemnify the Charterers against all claims and liabilities (including legal costs) they incur under the Bills of Lading arising from the Owners' failure to comply with the said acts, rules, regulations or oil pollution legislation. If the adjustment of General Average or the liability for any collision in which the vessel is involved while performing the carriage under this Bill of Lading fails to be determined in accordance with the law and practice of the United States of America, the following clauses shall apply:


**New Jason Clause**

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods, shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier o his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.


**Both-To-Blame Collision Clause**

"If the Ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of Master, mariner, pilot, or the servants of the Carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier"



ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision to, the colliding ships or objects are at fault in respect to a collision or contract.

**General Clause Paramount (1982)**
With respect to the shipment, carriage and discharge of the cargo, whether or not this Bill of Lading regulates the relations between the carrier and holder of same, this Bill of Lading shall have effect subject to the provisions of any legislation incorporating the rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading dated Brussels, 25th August, 1924, (The Hague Rules) or those Rules as amended by the Protocol signed at Brussels, February 23rd, 1968 (The Hague Visby Rules) and which is compulsorily applicable to the contract of carriage contained herein. If no such legislation is compulsorily applicable, The Hague Rules or, if applicable, the Hague Visby Rules as enacted in the country of the port of loading shall apply. When no such enactment is in force in the country of the port of loading, the corresponding legislation of the country of the port of discharge shall apply and in the absence of any such legislation, the terms of the 1924 convention as amended by the 1968 Protocol shall apply.

**U.S. Customs Advance Notification/AMS Clause for Voyage Charter Parties**
(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Owners shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:
i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond); and
iii) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs.

(b) The Charterers shall provide all necessary information to the Owners and/or their agents to enable the Owners to submit a timely and accurate cargo declaration.
The Charterers shall assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of this sub-clause. Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(c) The Owners shall assume liability for and shall indemnify, defend and hold harmless the Charterers against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Owners' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall not count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(d) The assumption of the role of carrier by the Owners pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

**BIMCO ISM Clause**
From the date of coming into force to the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "The Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request, the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

ADDITIONAL CLAUSES TO THE MV "VESSEL" / BORAL
CHARTER PARTY DATED XXXX, 2021

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "The Company" to comply with the ISM Code shall be for Owners' account.

**OWNERS:**                                      **CHARTERERS:**